1   **McDERMOTT WILL & EMERY LLP**
    JENNIFER L. KLEM (SBN 243244)
2   jklem@mwe.com
    AVIVA R. MORADY (SBN 268153)
3   amorady@mwe.com
    2049 Century Park East, Suite 3800
4   Los Angeles, CA  90067-3218
    Telephone:  +1 310 277 4110
5   Facsimile:   +1 310 277 4730

6   **BET TZEDEK LEGAL SERVICES**
    KEVIN KISH (SBN 233004)
7   kkish@bettzedek.org
    3250 Wilshire Boulevard, 13th Floor
8   Los Angeles, CA  90010-1509
    Telephone:  +1 323 939 0506
9   Facsimile:   +1 213 471 4568

10  Attorneys for Plaintiff
    AQULINA MWELU GEORGE
11

12                  UNITED STATES DISTRICT COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14

15  Aqulina Mwelu George,              CASE NO. CV14-02863-ABC-MRW

16              Plaintiff,             **FIRST AMENDED COMPLAINT
                                       FOR:**
17       v.                            **1) FAILURE TO PAY MINIMUM
                                       WAGE (FLSA, 29 U.S.C. §§ 201 *ET
18  Angela Soila Kasaine,              SEQ.*);
                                       2) FAILURE TO PAY MINIMUM
19              Defendant.             WAGE AND OVERTIME (CA
                                       LABOR CODE §§ 1194, 1194.2, 1197,
20  _____        1198);
                                       3) WAITING TIME PENALTIES
21  Angela Soila Kasaine,              (CA LABOR CODE § 203);
                                       4) SOLICITATION OF EMPLOYEE
22              Counter-Claimant,      BY MISREPRESENTATION (CA
                                       LABOR CODE §§ 970, 972);
23       v.                            5) BREACH OF CONTRACT;
                                       6) INTENTIONAL
24  Aqulina Mwelu George,              MISREPRESENTATION;
                                       7) NEGLIGENT
25              Counter-Defendant.     MISREPRESENTATION;
                                       8) NEGLIGENCE PER SE;
26  _____        9) UNLAWFUL RETALIATION
                                       (FLSA, 29 U.S.C. § 215)**
27
                                       **[DEMAND FOR JURY TRIAL]**
28**

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Plaintiff Aqulina Mwelu George ("Plaintiff"), for her causes of action against
2  defendant Angela Soila Kasaine ("Defendant"), alleges as follows:

3

4  **JURISDICTION AND VENUE**

5  1.  This Court has jurisdiction over this action pursuant to 28 U.S.C.
6  §1331 (conferring jurisdiction over claims arising under the laws of the United
7  States), 28 U.S.C. §1337 (conferring jurisdiction over claims arising under Acts of
8  Congress regulating commerce), 28 U.S.C. §1351 (conferring jurisdiction over all
9  civil actions and proceedings against consuls and vice consuls of foreign states or
10  members of a mission or members of their families), and the Fair Labor Standards
11  Act ("FLSA"), 29 U.S.C. § 216(b) (authorizing employees to bring civil actions in
12  courts of appropriate jurisdiction to recover damages for an employer's failure to
13  pay wages as required by the FLSA).

14  2.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

15  3.  This Court has supplemental jurisdiction over the state law claims
16  under 28 U.S.C. §1367(a), because they are so related to Plaintiff's federal claim
17  that they form part of the same case or controversy under Article III, Section 2 of
18  the United States Constitution.

19

20  **INTRODUCTION**

21  4.  This is an action for damages brought by Aqulina Mwelu George for
22  unpaid wages and related damages against her former employer, Angela Soila
23  Kasaine, a Kenyan consular official stationed in the United States.  Defendant
24  recruited Ms. George from Kenya into the United States under false pretenses,
25  promised her fair wages and good working conditions, and signed a contract for
26  Ms. George's employment approved by the United States government.

27  5.  After Ms. George's arrival in the United States, Defendant
28  intentionally and outrageously violated the terms of the contract, as well as the

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1  most basic labor protections of federal and state law, by requiring Ms. George to

2  work an average of eleven hours per day for payment of less than one dollar per

3  hour.  Ms. George also worked for Defendant for approximately six months

4  without a single day off before leaving her employment with the assistance of law

5  enforcement officials.

6        6.    Ms. George seeks compensation for unpaid wages and related

7  penalties under federal and California law, and seeks damages under California

8  law for solicitation of employee by misrepresentation, breach of contract,

9  intentional misrepresentation, negligent misrepresentation, and negligence per se.

10

11  **THE PARTIES**

12        7.    Ms. George is a citizen of Kenya who currently resides in Los

13  Angeles, California.  At the time of the events that gave rise to this Complaint, Ms.

14  George was legally residing in the United States by virtue of a duly issued A-3 visa,

15  given to employees of foreign diplomats.  8 U.S.C. §1101(a)(15)(A)(iii).  Ms.

16  George worked for Defendant in the United States from approximately May 5, 2013

17  to November 16, 2013.

18        8.    Upon information and belief, Defendant is a citizen of Kenya who,

19  along with her daughter, currently resides in Los Angeles, California.  At all times

20  relevant hereto, Defendant was stationed in Los Angeles, California, as the Third

21  Secretary at the Kenyan Consulate.  Upon information and belief, Defendant is still

22  currently performing consular duties for Kenya in Los Angeles, California.

23        9.    Defendant employed Ms. George within the meaning of the FLSA, the

24  California Labor Code, and the Industrial Welfare Commission ("IWC") Wage

25  Orders.

26

27  **FACTUAL ALLEGATIONS**

28        10.    Ms. George was born on April 5, 1990 in Makueni, Kenya.  She began

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

- 3 -                (No. CV14-02863-ABC-MRW)

1   working as a domestic worker approximately nine months after the birth of her son

2   in October of 2007, and has worked as a domestic worker since.

3       11.   Ms. George began working as a domestic worker for Defendant in or

4   around April or May of 2011 in Kenya, where both Ms. George and the Defendant

5   resided at that time.  Ms. George initially worked five days per week for Defendant.

6   After approximately three months of working five days per week, Ms. George

7   started worked six days per week at Defendant's request.  While in Kenya,

8   Defendant initially paid Ms. George 5,000 Kenyan shillings per month for her work

9   (approximately $58, using the current exchange rate), but later gave Ms. George a

10   raise to 6,000 Kenyan shillings (approximately $69), and finally to 7,000 Kenyan

11   shillings (approximately $81).

12       12.   Defendant was employed by the Kenyan government.  In or around

13   May of 2012, Defendant informed Ms. George that the Kenyan government was

14   sending Defendant to the United States to work.  Defendant asked Ms. George if

15   she would accompany her to the United States to continue employment as

16   Defendant's domestic worker.  Defendant informed Ms. George that if she were to

17   accompany her to the United States, she would pay Ms. George in accordance with

18   United States wage standards.

19       13.   Ms. George accepted Defendant's initial verbal employment offer on

20   the sole basis of Defendant's promise that she would pay Ms. George in accordance

21   with United States wage standards.  Ms. George was reluctant to leave her son, who

22   would stay in Kenya, but she knew that by accompanying Defendant to the United

23   States and earning United States wages, she would be able to earn more money than

24   she would have been able to earn in Kenya.

25       14.   Defendant began the process of assisting Ms. George in obtaining an

26   A-3 visa.  An A-3 visa allows representatives of foreign governments to bring

27   private workers into the United States for employment in their homes during a

28   period of diplomatic assignment.  Consular officials, like Defendant, do not enjoy

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

consular immunity for the treatment of their personal domestic employees holding A-3 visas.  *See Park v. Shin*, 313 F.3d 1138, 1143 (9th Cir. 2002).

15.     In order for Defendant to obtain Ms. George's A-3 visa, Defendant was required to submit an employment contract to the United States Embassy in Nairobi for approval.

16.     The initial draft employment contract submitted by Defendant to the United States Embassy promised to pay Ms. George approximately $8.27 an hour.

17.     One of Defendant's colleagues, Mr. Musina, accompanied Ms. George to the United States Embassy for her first A-3 visa interview.  At the interview, Embassy officers informed Ms. George that the Embassy did not approve of Defendant's initial employment contract because the hourly rate of pay was not high enough.  The United States Embassy instructed Ms. George to return to the Embassy after Defendant changed the contract to reflect a higher hourly rate of pay for Ms. George.

18.     Upon information and belief, Defendant left Kenya for the United States in or around November of 2012, leaving Ms. George behind in Kenya to continue caring for Defendant's daughter.

19.     Defendant sent Ms. George a revised draft employment contract from the United States.

20.     In the revised draft employment contract, Defendant promised to pay Ms. George $9.27 per hour, $1.00 more per hour than the previous draft contract. The revised draft contract stated that Ms. George would be employed as a domestic worker performing housekeeping and child care duties; that her work would be limited to five (5) days per week and eight hours (8) per day; and that she would be paid overtime wages for work in excess of eight hours per day during the week and for all work on Saturday and Sunday.  In addition, the contract stated that Defendant would provide vacation days; would provide room and board free of charge; was not permitted to take possession of Ms. George's passport; and that

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Ms. George would be allowed to voluntarily leave Defendant's home in the United

2    States whenever she wanted to do so, among other terms.

3         21.    The revised employment contract was approved by Ms. George and

4    signed by Defendant on behalf of herself and Ms. George in February 2013.  *See*

5    Exhibit A.

6         22.    In or around early 2013, Ms. George brought the new executed

7    employment contract between Ms. George and Defendant to her second visa

8    interview.  The United States Embassy approved the revised contract and issued an

9    A-3 visa to Ms. George in February of 2013.

10        23.    After Ms. George received her A-3 visa, Defendant made the

11   arrangements for Ms. George to travel to the United States.  Ms. George first

12   traveled to London, England, accompanied by Defendant's mother and Defendant's

13   young daughter.  Defendant met Ms. George in London, and after approximately

14   one week in London, Ms. George flew to the United States with Defendant,

15   Defendant's daughter, and Defendant's mother.

16        24.    Prior to leaving for the airport in London, Defendant demanded Ms.

17   George's passport.  Ms. George gave her passport to Defendant.

18        25.    On May 5, 2013, after landing in Los Angeles, California, Defendant

19   gave Ms. George's passport back to her so that she would be able to proceed

20   through customs at the airport.  Once past customs, however, Defendant again

21   demanded Ms. George's passport, and Ms. George once again gave her passport to

22   Defendant.

23        26.    After arriving at Defendant's home in Los Angeles, Defendant

24   informed Ms. George that she would keep possession of Ms. George's passport

25   because it would be difficult to obtain a new passport for Ms. George if the passport

26   were to be misplaced.  Ms. George was surprised when Defendant informed her that

27   she could not maintain possession of her own passport, yet Ms. George did not

28   object because Defendant was her boss, Defendant worked for the Kenyan

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

(No. CV14-02863-ABC-MRW)

1   government, and Defendant was the only person who Ms. George knew in the

2   United States at that time.

3        27.    In addition to Ms. George's passport, Defendant also kept under her

4   exclusive control Ms. George's ATM card for an account in Ms. George's name in

5   Kenya, Ms. George's birth certificate, Ms. George's U.S. social security card, and

6   insurance policy documents for Ms. George's son.

7        28.    On information and belief, Defendant kept Ms. George's passport at an

8   unknown and unidentified location in Defendant's home residence in Los Angeles.

9   On information and belief, Defendant kept Ms. George's ATM card and birth

10  certificate in Defendant's office.  Ms. George was unaware of where Defendant

11  kept Ms. George's U.S. social security card and the insurance policy documents for

12  Ms. George's son.

13       29.    Immediately upon beginning the term of her employment for

14  Defendant in the United States in or around May of 2013, Ms. George learned that

15  Defendant had lied to her about how many hours per day she would be required to

16  work.  Ms. George started work at approximately 7:00 a.m. each day.  Ms.

17  George's duties included taking care of Defendant's young daughter, cooking for

18  Defendant and her daughter, cleaning Defendant's home, and other housework.

19  Ms. George was typically required to work from 7:00 a.m. until around 9:00 p.m.

20  each day.

21       30.    Ms. George was usually able to rest during the day for approximately

22  one or two hours during Defendant's daughter's naps, but during this time, Ms.

23  George continued to be "on call," and was required to watch Defendant's daughter.

24  On most days, Ms. George was able to take one hour off when Defendant returned

25  home from work in the evening.  Ms. George was also able to rest for

26  approximately one hour on approximately two occasions when she stayed home

27  while Defendant attended church.  On other occasions, Ms. George would try to

28  rest alone in her bedroom, but Defendant would call for her and give her more work

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

(No. CV14-02863-ABC-MRW)

1   to do.  In total, Ms. George worked for approximately eleven compensable hours

2   every day, seven days per week.

3       31.    In or around June of 2013, when Ms. George was to receive her first

4   payment for her first month of work for Defendant in the United States, Ms. George

5   also learned that Defendant had lied to her about how much she would be paid.

6   Defendant informed Ms. George that she would not pay her according to the

7   executed employment contract that had been reviewed and approved by the United

8   States Embassy.  Defendant informed Ms. George that instead of paying Ms.

9   George $9.27 per hour, Defendant would pay Ms. George $300 per month.  Upon

10  information and belief, Defendant never intended to carry out the contractual

11  promises made to Ms. George and the United States government.

12      32.    Prior to any discussion about Defendant and Ms. George moving to the

13  United States, while Ms. George worked for Defendant in Kenya in or around May

14  2012, Defendant had stated that Defendant would place, on a monthly basis, 3,000

15  Kenyan shillings, or approximately $34, into an unidentified Kenyan bank account

16  to be used for school expenses for Ms. George's son.  Defendant informed Ms.

17  George that these monthly payments would continue while Ms. George worked for

18  Defendant in the United States.  In or around May of 2013, when Ms. George began

19  her employment for Defendant in the United States, Defendant stated that she

20  would also place, on a monthly basis, 3,000 Kenyan shillings into a Kenyan bank

21  account in Ms. George's name.  To date, Ms. George has never seen paperwork

22  verifying the existence of either of these two bank accounts, nor has Ms. George

23  received access to either of these two bank accounts.  Upon information and belief,

24  Defendant was not making payments to either of these two bank accounts, contrary

25  to her statements to Ms. George.

26      33.    In or around May of 2013, Defendant also informed Ms. George that

27  Defendant would transmit, on a monthly basis, 4,000 Kenyan shillings, or

28  approximately $46, to Ms. George's parents in Kenya.  Upon information and

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

belief, Ms. George's parents received these monthly payments.

34.     In or around May of 2013, Defendant informed Ms. George that Ms. George was not allowed to leave the house without Defendant's permission. Defendant told Ms. George that people in the United States were bad and that Ms. George should not speak to them.  Defendant told Ms. George that the United States was a very confusing and dangerous place and that Ms. George could get lost if she were to go out by herself.  Ms. George was afraid of disobeying Defendant by leaving the house without Defendant's permission, and Ms. George was also afraid of speaking with anyone outside of Defendant's home.

35.     In or around June of 2013, when Defendant paid Ms. George for her first month of work in the United States, Ms. George asked Defendant why Defendant was violating the terms of Ms. George's employment contract by paying her a mere percentage of what she was owed.  In response, Defendant stated that Ms. George was being paid enough money and that Ms. George did not deserve more because Defendant was providing her with free room and board, despite the fact that Ms. George's employment contract expressly allowed for free room and board, separate and apart from the wages promised to Ms. George.

36.     Ms. George did not know anyone other than Defendant in the United States and did not have anyone she could ask for help.  Ms. George felt that she had no choice but to continue to work for Defendant and accept Defendant's employment conditions.  The arduous working conditions, coupled with Ms. George's social isolation and total dependence on her employer, caused Ms. George exhaustion, sadness, and mental distress.

37.     On Saturday, November 16, 2013, after approximately six months of working for Defendant in the United States, Ms. George left Defendant's home permanently.  On the morning of November 16, 2013, Ms. George cleaned Defendant's bedrooms and bathroom and prepared meals for Defendant and Defendant's daughter.  Ms. George felt exhausted from working the entire week

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

and the entire morning, as was her usual routine, and she therefore asked Defendant if she could take the afternoon off.  Defendant refused to allow Ms. George any time off.  Ms. George responded that Ms. George knew her rights, at which point Defendant became angry, went upstairs, and returned with Ms. George's passport, which she threw at Ms. George.  Defendant told Ms. George to gather her belongings and leave Defendant's home.

38.   Ms. George went to the store to purchase a suitcase for her belongings. When she returned, Defendant informed Ms. George that she had called Washington, D.C. and cancelled Ms. George's visa.  This greatly scared Ms. George.

39.   Not knowing where she should go, and not knowing anyone in the United States, Ms. George called a United States Department of State hotline that she had found in a pamphlet given to her by the United States Embassy during her visa interview.  Shortly thereafter, police officers from the Los Angeles Police Department were dispatched to Defendant's home.  Once the police officers arrived, they retrieved Ms. George's birth certificate and ATM card from Defendant.  Defendant had already given Ms. George's passport and social security card back to Ms. George by the time the police officers arrived.  Upon information and belief, Defendant still has in her possession the insurance policy documents for Ms. George's son.

40.   As a result of the oppressive treatment inflicted by Defendant upon Ms. George, Ms. George often suffers from fear and anxiety as well as severe headaches that, on one occasion, necessitated an Emergency Room visit.

41.   After permanently leaving Defendant's residence, Ms. George received a phone call from Defendant's father in Kenya, where, upon information and belief, he serves as a member of Parliament.  This phone call frightened Ms. George because she believed that Defendant's father holds a position of power in the Kenyan government.  Defendant's father inquired about Ms. George's

(No. CV14-02863-ABC-MRW)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1  whereabouts, and represented that he would pay Ms. George the money she was
2  owed if Ms. George would return to Kenya.  Ms. George did not believe that she
3  would get paid the money that she was owed if she returned to Kenya.

4          42.    Ms. George filed her initial complaint in this matter on April 14, 2014.
5  On May 20, 2014, in conjunction with her Answer, Defendant filed a
6  countercomplaint against Ms. George, alleging abuse of process, intentional
7  infliction of emotional distress, conversion, common count for money lent, and
8  rescission and restitution.  Despite the fact that Ms. George's employment with
9  Defendant had ended approximately six months prior, Defendant raised these
10  claims for the first time only after Ms. George had filed her complaint against
11  Defendant.  Defendant's counterclaims are baseless and were filed with a
12  retaliatory motive.

13          43.    Specifically, Defendant's abuse of process claim, now dismissed, is
14  barred as a matter of law.  All of Defendant's allegations concerning intentional
15  infliction of emotional distress are factually false and cannot be supported by any
16  evidence.  Defendant's claim of conversion must also fail because Ms. George
17  removed only her own property from Defendant's home.  Defendant's claim of
18  common count for money lent is baseless because Defendant loaned Ms. George
19  10,000 shillings, not 20,000 shillings, all of which were promptly repaid before
20  Defendant or Ms. George ever relocated to the United States.  Finally, Defendant's
21  count for rescission and restitution must also fail because Ms. George never entered
22  into, or even discussed, a June 6, 2013 contract with Defendant, which is alleged to
23  pay Ms. George in amounts beyond the employment agreement approved by the
24  U.S. Embassy.  Moreover, Ms. George never received or had access to any of the
25  benefits alleged under this count.

26
27
28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

(No. CV14-02863-ABC-MRW)

# FIRST CAUSE OF ACTION

## (For Failure to Pay Minimum Wage Under the Fair Labor Standards Act, 29 U.S.C. § 206(a)(1))

44.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 43 above.

45.     Defendant employed Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

46.     Defendant violated the provisions of the FLSA, 29 U.S.C. §§ 201 *et seq.*, by failing to pay Plaintiff, a live-in domestic worker, the greater of the federal or state minimum wage.  29 U.S.C. § 206(f); 29 C.F.R. § 552.102; 29 U.S.C. § 218(a).

47.     The federal minimum wage, during all times relevant, was $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  The California state minimum wage, during all times relevant, was $8.00 per hour.  IWC Wage Order 15-2001 § 4.

48.     Defendant was aware or should have been aware of the requirement to pay Plaintiff the statutorily defined minimum wage for her labor.

49.     Defendant consistently failed to pay Plaintiff the minimum wage for hours worked as required under federal law for her work in California.

50.     Defendant's failure to pay the minimum wage was willful.

51.     As a result of Defendant's willful violation of the FLSA, under 29 U.S.C. § 216(b), Plaintiff is entitled to recover from Defendant her unpaid wages, an additional equal amount in liquidated damages, and costs and reasonable attorneys' fees in amounts to be proven at trial, and such further relief as the court deems proper.

# SECOND CAUSE OF ACTION

## (For Failure to Pay Minimum Wage and Overtime Under California Labor Code Sections 1194, 1194.2, 1197, and 1198)

52.     Plaintiff realleges and incorporates by reference the allegations

(No. CV14-02863-ABC-MRW)

contained in paragraphs 1 through 51 above.

53.    Labor Code § 1197 establishes the right of employees to be paid minimum wages for their work, in amounts set by state law. Labor Code §§ 1194(a) and 1194.2(a) provide that an employee who has not been paid the legal minimum wage and legal overtime pay may recover the unpaid balance together with attorneys' fees and costs of suit as well as liquidated damages in an amount equal to the minimum wages unpaid and interest on those amounts.

54.    Labor Code § 1197 requires the payment of no less than the minimum wage fixed by the IWC for all persons employed in this State. Labor Code § 1198 and the applicable IWC Wage Orders provide that domestic service "live-in" employees in California shall not be employed more than nine hours in any workday for the first five workdays in a work week unless they receive additional compensation beyond their regular wages in amounts specified by law. Such an employee is entitled to overtime pay at a rate of one and one-half times her regular rate for all hours worked in excess of nine during the first five workdays. For the first nine hours worked on the sixth and seventh days of the work week, the employee is entitled to be paid one and one-half times her regular rate. For the remaining hours worked on the sixth and seventh days, the employee is entitled to be paid at double her regular rate. IWC Wage Order 15-2001 § 3.

55.    By virtue of Defendant's unlawful failure and refusal to pay Plaintiff wages in the amount and at the time due as required by law, Plaintiff has suffered damages in amounts to be proven at trial, and is entitled to all appropriate penalties provided by the Labor Code and the IWC Wage Orders, including liquidated damages.

## **THIRD CAUSE OF ACTION**

### **(For Waiting Time Penalties Under California Labor Code Section 203)**

56.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 55 above.

(No. CV14-02863-ABC-MRW)

57.     Labor Code § 203 provides that if an employer willfully fails to pay any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the date of the termination of employment until the wages are paid, for up to thirty days.

58.     At the time Plaintiff permanently left Defendant's home, Defendant owed her wages and overtime premiums, as alleged herein.

59.     Defendant has willfully failed to pay Plaintiff the wages and overtime premiums she is due, entitling her to recover waiting time penalties equal to thirty days' pay, pursuant to Labor Code § 203.

60.     By virtue of Defendant's willful failure to pay earned wages and overtime amounts to Plaintiff as required by California law, and other violations of the law as set forth herein, Plaintiff has suffered damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (For Solicitation of Employee Through Misrepresentation Under California Labor Code Sections 970 and 972)

61.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 60 above.

62.     Labor Code § 970 prohibits persuading a person to travel from outside California to within this State for the purpose of working in any capacity through or by means of knowingly false representations.  Violations of Labor Code § 970 give rise to criminal and civil penalties, including double damages resulting from such misrepresentations under Labor Code § 970.

63.     Defendant intentionally made misrepresentations of material facts, directly and through her agents, regarding the terms of Plaintiff's employment, including but not limited to the representation that Plaintiff would be paid $9.27 per hour for her services.  When Defendant made this representation, she knew it was material and false, or had no reasonable ground for thinking that the representation

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

(No. CV14-02863-ABC-MRW)

was true.  Defendant made the representation with the intent to defraud and induce Plaintiff to come to the United States.  At the time Plaintiff acted, Plaintiff did not know that the representation was false and believed it to be true.  Plaintiff considered the representation material and reasonably relied upon the representation to change her residence for the purpose of working for Defendant.

64.    By virtue of Defendant's misrepresentation and Plaintiff's reliance upon it, Plaintiff has suffered damages in amounts to be proven at trial, and is entitled to all appropriate penalties provided by the Labor Code and the IWC Wage Orders, including double damages.

## FIFTH CAUSE OF ACTION

### (For Breach of Contract)

65.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 64 above.

66.    Defendant and Plaintiff agreed that Plaintiff would receive $9.27 for the services she performed for Defendant in the United States, and that she would be paid overtime if she worked more than five days per week or eight hours per day.  This employment contract was set forth in writing.

67.    Plaintiff has duly performed each and every condition, covenant, and promise and obligation required on her part in accordance with the terms and conditions of this contract.

68.    Defendant breached her contract with Plaintiff by not making the payments required under the contract, by refusing to allow Plaintiff any time off, and by failing to comply with the terms and conditions promised in the contract as outlined above.

69.    As a result of the breach of contract, Plaintiff has suffered damages, as provided by state common law, in an amount to be determined at trial.

(No. CV14-02863-ABC-MRW)

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## SIXTH CAUSE OF ACTION

### (For Intentional Misrepresentation)

70.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 69 above.

71.     Defendant, directly or through her agent, made misrepresentations of material facts regarding the nature of Plaintiff's employment, including but not limited to the representation that Plaintiff would be paid $9.27 per hour for her services and that she would work five days a week and eight hours per day.  When Defendant made these representations, she knew they were false, or made the representations recklessly with no regard for their truth, or had no reasonable grounds for thinking that the representations were true.

72.     Defendant made the above-mentioned misrepresentations with the intent to defraud and induce Plaintiff to leave her home in Kenya and come to the United States to be employed by Defendant.

73.     At the time Plaintiff acted, Plaintiff did not know that the representations were false and believed them to be true.  Plaintiff considered the representations material and reasonably and substantially relied upon the representations to leave her home in Kenya to work for Defendant.

74.     As a direct and proximate result of Defendant's conduct as alleged in this Complaint, Plaintiff has lost wages and other benefits in amounts to be proven at trial.  Further, Defendant's conduct was malicious, fraudulent, despicable, and/or oppressive in that Defendant acted with full knowledge of the consequences to Plaintiff, with the intent to violate the statutory and other rights of Plaintiff, or with a willful, conscious, wanton, and reckless disregard for Plaintiff's rights and for the deleterious consequences and cruel and unjust hardship resulting to Plaintiff.  Consequently, Plaintiff is entitled to exemplary and punitive damages from Defendant in an amount to be proven at trial.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

## SEVENTH CAUSE OF ACTION

### (For Negligent Misrepresentation)

75.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 74 above.

76.     Defendant made false representations to Plaintiff about the circumstances of her employment in the United States, including, but not limited to, falsely informing Plaintiff that she would be properly paid in accordance with the laws of the United States and that she would have a five day per week, eight hour per day job working in Defendant's household.

77.     Defendant had no reasonable grounds for believing that her representations to Plaintiff were true.

78.     Defendant intended for Plaintiff to rely on her false statements and misrepresentations.  Plaintiff justifiably relied on Defendant's misrepresentations in deciding to leave her home and life and son in Kenya to travel to the United States to work for Defendant.

79.     Plaintiff was unaware of Defendant's true intentions, and had she been aware of such facts, would not have left her home in Kenya to come to the United States to work for Defendant.

80.     Plaintiff was injured as a result of her reliance on Defendant's false statements and misrepresentations, which caused her to leave her home, subjected her to exploitation of her labor, and caused her to suffer damages.  Plaintiff is entitled to damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### (For Negligence Per Se)

81.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 80 above.

82.     The services provided by Plaintiff to Defendant were performed under conditions that violated provisions of the California Labor Code and the IWC Wage

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1   Orders as alleged in this Complaint.  Defendant knew or reasonably should have

2   known of these egregious and ongoing violations, yet did and has done nothing to

3   alleviate, investigate, remedy, or report the violations to appropriate authorities.

4        83.   The minimum wage and overtime guarantees and other provisions of

5   the California Labor Code and applicable IWC Wage Orders were enacted to

6   protect workers from economic and personal injuries caused by poverty-level

7   wages, unduly long working hours, and other substandard working conditions.  The

8   acts and omissions of Defendant as alleged in this Complaint were and are

9   substantial factors contributing to the illegal working conditions under which

10  Plaintiff labored.

11       84.   Plaintiff is among the class of persons that the California Labor Code

12  and the IWC Wage Orders were designed to protect and for whose protection these

13  statutes and regulations were adopted.  Plaintiff's injuries are of the type that the

14  foregoing statutes and regulations are intended to prevent.  Defendant's violations

15  of the foregoing statutes and regulations constitute negligence per se and create a

16  presumption of negligence.

17       85.   As a direct and proximate result of Defendant's acts and omissions as

18  alleged in this Complaint, Plaintiff has suffered and continues to suffer damages in

19  an amount, nature and degree to be proven at trial.  Defendant's conduct as

20  described in this Complaint was malicious, fraudulent, and/or oppressive, and done

21  with a conscious disregard for Plaintiff's rights and for the deleterious

22  consequences of Defendant's actions.  Consequently, Plaintiff is entitled to an

23  award of punitive damages.

24  **NINTH CAUSE OF ACTION**

25  **(For Unlawful Retaliation in Violation of the Fair Labor Standards Act)**

26       86.   Plaintiff realleges and incorporates by reference the allegations

27  contained in paragraphs 1 through 85 above.

28       87.   The anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3),

1  prohibits retaliation against employees who have "filed any complaint or instituted
2  or caused to be instituted any proceeding under or related to this Act…."

3  88.  Violations of 29 U.S.C. § 215(a)(3) give rise to liability under 29
4  U.S.C. § 216(b) for all appropriate legal and equitable relief, including, without
5  limitation, compensatory damages, liquidated damages, punitive damages, and
6  attorneys' fees.

7  89.  At all times relevant to this cause of action, Defendant was acting as
8  Plaintiff's employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

9  90.  After being served with Plaintiff's Complaint in which Plaintiff
10 asserted her rights under the FLSA and the California Labor Code, Defendant filed
11 a baseless counter-complaint against Plaintiff with a retaliatory motive, causing
12 Plaintiff harm.  Defendant filed the retaliatory counter-complaint willfully,
13 maliciously, and with reckless disregard for Plaintiff's rights.  Baseless lawsuits
14 filed with a retaliatory motive as a result of protected activity constitute illegal
15 retaliation under the FLSA.  Because the California litigation privilege is preempted
16 by the FLSA by virtue of the Supremacy Clause of the United States Constitution,
17 the litigation privilege does not operate as a bar to claims brought under the FLSA
18 in response to retaliatory lawsuits.

19 91.  Because Defendant violated Plaintiff's rights under 29 U.S.C. §
20 215(a)(3), Plaintiff is entitled to compensatory damages in an amount to be proven
21 at trial, liquidated damages, punitive damages, and attorneys' fees.

22
23                              **DEMAND FOR JURY TRIAL**
24     Plaintiff hereby demands a jury trial on all issues so triable.

25
26                                **PRAYER FOR RELIEF**
27     WHEREFORE, Plaintiff respectfully prays that this Court grant her the
28 following relief:

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1    92.    Enter judgment in favor of Plaintiff in each and every cause of action
2  asserted in this Complaint;

3    93.    Award Plaintiff her unpaid minimum and overtime wages, penalties
4  and interest, according to proof;

5    94.    Award Plaintiff liquidated damages pursuant to California Labor Code
6  § 1194.2(a);

7    95.    Award Plaintiff double damages pursuant to California Labor Code §
8  972;

9    96.    Award Plaintiff  waiting time penalties pursuant to California Labor
10  Code § 203;

11    97.    Award Plaintiff  general, statutory, compensatory, and special
12  damages, according to proof;

13    98.    Award Plaintiff  punitive damages according to proof;

14    99.    Award Plaintiff  her reasonable costs and attorneys' fees; and

15    100.   Such other and further relief as the Court deems just and proper.

Dated:    June 13, 2014              McDERMOTT WILL & EMERY LLP
                                     JENNIFER L. KLEM
                                     AVIVA R. MORADY


                                     By:_____/s/_____
                                        JENNIFER L. KLEM
                                        Attorneys for Plaintiff
                                        AQULINA MWELU GEORGE